LAYTON v. CREGAN & MALLORY CO., INC.

1. EVIDENCE—HEARSAY—MANUFACTURED AND SELF-SERVING STATEMENTS.

One may not make statements and complaints after an injury and perform acts indicative of injury, pain and suffering in the presence of others and call them as witnesses to testify thereto since it is subject to charge of being manufactured, hearsay and self-serving.

2. SAME—EXCLAMATIONS OF PAIN AND SUFFERING—RES GESTÆ.

Exclamations of pain and suffering are properly admissible only when part of the *res gestæ*, when they are the usual, natural, ordinary, spontaneous exclamations of pain accompanying the injury itself.

3. SAME—PAIN AND SUFFERING—AUGMENTATION OF DAMAGES.

Statements and declarations of pain and suffering made after an injury has occurred are inadmissible when made after suit for damages therefor is contemplated or commenced and augmentation of damages may tempt exaggeration and seriousness of condition.

4. SAME—PAIN AND SUFFERING—SPONTANEOUS STATEMENTS.
   Testimony of statements as to pain and suffering made under circumstances negativing spontaneity should be excluded.

5. APPEAL AND ERROR—LAW OF CASE—EVIDENCE.
   Testimony admitted contrary to the law of the case *held,* error.

6. EVIDENCE—PHYSICIAN—HEARSAY.
   Testimony of physician who examined plaintiff for purpose of testifying at trial and not for treatment and obtained history of case from plaintiff, that her condition might have been caused by accident, *held,* inadmissible as hearsay.

7. TRIAL—APPEAL TO PASSION.
   Parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice.

8. APPEAL AND ERROR—ARGUMENT OF COUNSEL—REMITTITUR.
   Repeated argument of plaintiff's counsel that defendant's driver was guilty of degree of negligence which would justify criminal prosecution and imprisonment after several objections by defendant's counsel, *held,* reversible error notwithstanding court reduced $9,000 award to $7,500.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 10, 1934. (Docket No. 54, Calendar No. 38,019.) Decided December 10, 1934.

Case by Josephine Layton against Cregan & Mallory Company, Inc., a foreign corporation, for personal injuries sustained in an automobile accident at intersection of highways. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and new trial granted.

See, also, 263 Mich. 30; 265 Mich. 574.

*Adams, VanHorn & Bloem,* for plaintiff.

*Harry C. Howard* and *Wm. J. Howard,* for defendant.

Potter, J. Plaintiff sued defendant to recover damages alleged to have been suffered by her by reason of defendant's negligence. From a judgment for plaintiff, defendant appeals and plaintiff takes a cross-appeal.

The case was here in *Layton* v. *Cregan & Mallory Co.*, 263 Mich. 30, where the facts sufficiently appear; and in *Layton* v. *Cregan & Mallory Co.*, 265 Mich. 574, where additional facts appear. Sixty errors are assigned by appellant, some of which will be considered, and all disposed of.

1. Many lay witnesses were permitted to testify, over objection on the part of defendant, to the acts, conduct, statements and complaints of plaintiff made after the accident. This testimony was objected to. Error is assigned on its reception.

These witnesses testified as to what plaintiff said and did. Such testimony was hearsay and inadmissible under ordinary circumstances. One may not be permitted to make statements and complaints after an injury and perform acts indicative of injury, pain and suffering in the presence of others, and then call them as witnesses to testify thereto. Such claimed testimony is subject to the charge it was manufactured for the occasion and is hearsay, because it is, or may be, self-manufactured and self-serving. Exclamations of pain and suffering are sometimes admissible, but they are properly so only when, as a part of the *res gestæ,* they are usual, natural and ordinary acts resulting from the injury received—when they are the spontaneous exclamations of pain accompanying the injury or injuries themselves. Statements and declarations of pain and suffering made after an injury has occurred and when suit to recover damages therefor is contemplated, or has been commenced; when the party considers, or may have considered, what statements

and complaints she ought to make to augment her damages; where she is under temptation to feign the seriousness of her condition, and to make exaggerated statements in relation thereto, are inadmissible.

This question was before the court upon a former appeal. It was said:

"Testimony of statements of pain and suffering made by plaintiff, under circumstances negativing spontaneity, and therefore, open to the charge of being a mere relation of past suffering, or furnishing hearsay evidence thereof at the trial, should have been excluded." *Layton* v. *Cregan & Mallory Co.*, 265 Mich. 574, 580.

This is the rule established by the great weight of authority.

In *Grand Rapids & Indiana R. Co.* v. *Huntley*, 38 Mich. 537 (31 Am. Rep. 321), the rule stated was:

"These statements are admitted only upon the ground that they are the natural and ordinary accompaniments and expressions of suffering. It would be impossible in most cases to know of the existence or extent or character of pain without them. They are received therefore as acts rather than declarations, and admitted from necessity. The rule which admits declarations of present suffering has never been extended so as to include declarations either of past suffering or of the causes in the past of such suffering, so as to make such statements proof of the facts. Declarations concerning the past are narratives and not acts. Exclamations of suffering may be, and if honest are, parts of the occurrence itself. * * *

"We cannot think it safe to receive such statements which are made for the very purpose of getting up testimony, and not under ordinary circumstances."

The rule laid down in *Layton* v. *Cregan & Mallory Co.*, 265 Mich. 574, established the law of the case and we see no reason for departing therefrom. The admission of this testimony was contrary to the law of the case and constituted error.

2. Dr. Sherman Gregg was sworn as a witness for plaintiff. He was a practicing physician in the city of Kalamazoo, having been engaged in medical practice for 24 years, a specialist in nervous diseases during the time he was employed at the Kalamazoo State Hospital. He was not plaintiff's regular attending physician, but, he says, his examination was for the purpose of coming into court and testifying, and not for the purposes of treatment. During his examination by plaintiff's counsel, he was asked a long hypothetical question which was objected to because it did not contain all the facts, was not a correct statement of all the circumstances, and called for an opinion which foreclosed the jury on the question of fact. The court permitted the answer. The witness said:

"Well, my conclusion was, after examining her and ruling out everything we could think of that might act as a factor, that was the conclusion we came to, that it was the result of the accident."

Counsel for defendant moved to strike out the answer, and for a mistrial. The court said there was no reason to suppose the witness knew the legal effect of the answer and directed that the jury disregard the same, and struck out the answer. The form of the question was then changed and the witness testified that, in his opinion, the physical condition of the plaintiff might have been caused by the accident. In order to permit this witness to testify, he obtained a history of the case from plaintiff.

On cross-examination, the following occurred:

"*Q.* Now, if the patient, either consciously or unconsciously, exaggerates, your findings are modified, aren't they?

"*A.* They are.

"*Q.* You always have the human equation to deal with, that element of error?

"*A.* Yes, sir.

"*Q.* If there is an erroneous response, then your findings are in error to that extent, aren't they?

"*A.* They would be."

The doctor realized the history of the case upon which he based his opinion or conclusion was hearsay. He testified:

"That is true, that is all hearsay, but it is the only way you can get a history, checking up for the different tests. She tried—seemed to make an honest effort to cooperate."

This testimony was objected to and a motion made to strike it out. A very similar question was before the court in *Grand Rapids & Indiana R. Co.* v. *Huntley, supra,* where it is said:

"The physicians here were not called in to aid or give medical treatment. * * *

"They were sent for merely to enable the plaintiff below to prove her case. The whole course of the plaintiff was taken to no other end. She had in her mind just what expressions her cause required. They were therefore made under a strong temptation to feign suffering if dishonest, and a hardly less strong tendency if honest to imagine or exaggerate it. The purpose of the examination removed the ordinary safeguards which furnish the only reason for receiving declarations which bear in a party's own favor. * * *

"The physicians were called in, not to give medical aid but to make up medical testimony; and the declarations were made to them while engaged in that work. It would be difficult to find a case more plainly within the mischief of the excluding rule."

When this case was here before, in *Layton* v. *Cregan & Mallory Co.*, 265 Mich. 574, it was said:

"The court permitted a medical witness to answer the following question:

" 'Is the condition you found during all this time, in your opinion, caused by the injury she sustained in the accident, or by working on the farm?'

"This testimony invaded the province of the jury and its admission, over objection, constituted error. *DeGroot* v. *Winter*, 261 Mich. 660."

3. Upon the trial of the case, during the closing argument of plaintiff's counsel to the jury, it was said:

"She had been a valuable asset to the community. She belonged to the class of people who form the very backbone of the community, and she had earned an age of serenity and enjoyment, and Baum comes along. I don't charge him with anticipating. Of course, he didn't anticipate anything, but he comes along on the highway, and when he operates a car on the highway, he is supposed to have some regard for the rights of others, and he indifferently, recklessly drives upon this highway. His eyes might just as well shut. I spoke about gross negligence awhile ago. When I said 'gross,' I didn't mean it in a technical sense. I meant it in a term of degree, a high degree of negligence; almost inconceivable that a man would do that. He was not drunk. If he was drunk, you might have some conception about it; but his negligence was such that he should have been put in prison."

Whereupon, defendant's counsel objected to this as an appeal to the passion of the jury and asked the court to tell the jury to disregard that appeal. Plaintiff's counsel then continued:

"I am talking, your honor, about the high degree of negligence which I claim the record shows. Mr. Baum was using at the time that this collision occurred, and claim that it was negligence of such a type that it justified criminal prosecution and a sentence of imprisonment along with it."

Defendant's counsel moved that the last remarks be stricken out and the jury be told it was highly improper to make the remarks in the presence of the jury and to make that kind of an appeal. Whereupon, plaintiff's counsel stated:

"I would like to say this further in that connection to make the record clear: You should not take it into consideration in connection with determining the amount of damages at all. It bears very strongly upon the question of liability in the case."

Counsel for defendant insisted upon a ruling. Whereupon, the trial court said:

"I think the objection is well made and the jury should disregard this remark made by Mr. Bloem, to the effect that Baum, the driver of this car, should be—committed a crime for which he should be committed to prison. For the sake of the record, it may appear that the remarks were made by Mr. Bloem in a rather conversational tone, not with any particular emphasis, not impassioned at all in manner, and probably in the best of good faith; but it is my judgment that the jury should disregard those remarks. I am not aware of any crime that Baum committed on the facts shown in this case. I am not aware that he could have been committed to prison for anything that the testimony shows he did or failed to do. I think the jury may well disregard it."

After verdict and judgment, defendant moved for a new trial, among other things, because of the improper argument of counsel and the ruling thereon by the court, and because the jury were inflamed by the intemperate remarks of counsel appealing to its passion, evidenced not only by the amount of the verdict, but by the announcement of the woman foreman of the verdict of the jury in the following language:

"We find the defendant *guilty of negligence* and for the plaintiff in the amount of $9,000."

Upon consideration of the motion for a new trial, it was said the only ruling, if any, that was not in entire accord with the effort on the part of the trial court to secure the defendant a fair trial was the improper argument hereinbefore discussed. Because of that argument, which the trial judge deemed improper, he ordered a new trial unless plaintiff should elect to remit $1,500, but held if such remittitur was filed, judgment should be entered for plaintiff in the sum of $7,500. Counsel for defendant contend the remarks of counsel for plaintiff to the jury constituted an appeal to prejudice and passion; that the jury were led to believe that the criminal authorities of Allegan county had not prosecuted, and that the jury should do what the Allegan county authorities had neglected to do. Defendant relied upon *Cluett* v. *Rosenthal,* 100 Mich. 193 (43 Am. St. Rep. 446); *Smith* v. *Jennings,* 121 Mich. 393; *Selby* v. *Railway Co.,* 122 Mich. 311; *Coan* v. *Township of Brownstown,* 126 Mich. 626; *Boydan* v. *Haberstumpf,* 129 Mich. 137; *Ward* v. *Reed,* 134 Mich. 392; *Hillman* v. *Railway Co.,* 137 Mich. 184; *Remey* v. *Railway Co.,* 141 Mich. 116; *Martin* v. *Fisher,* 143 Mich. 462; *Hyman* v. *Kirt,* 153 Mich. 113; *Reed* v. *Louden,* 153 Mich. 521; *Spencer* v. *Simmons,* 160 Mich. 292 (19 Ann. Cas. 1126);

*Hughes* v. *City of Detroit,* 161 Mich. 283 (137 Am. St. Rep. 504); *Rauhala* v. *Maki,* 172 Mich. 112; *Morrison* v. *Carpenter,* 179 Mich. 207 (Ann. Cas. 1915 D, 319); *Solomon* v. *Stewart,* 184 Mich. 506 (Ann. Cas. 1917 A, 942); *Daly* v. *Railroad Co.,* 197 Mich. 340; *Chicago, D. & C. T. J. R. Co.* v. *Simons,* 200 Mich. 76; *Barnaby* v. *Vorauer,* 212 Mich. 395; and the cases cited in the opinions in the cases above named.

Plaintiff contends the remarks made were warranted by the testimony and by *Koetsier* v. *Cargill Co.,* 241 Mich. 370; *Casey* v. *Kelly-Atkinson Construction Co.,* 240 Ill. 416 (88 N. E. 982); *Chicago City R. Co.* v. *Shreve,* 128 Ill. App. 462; *Brown* v. *Jerrild,* 29 Ariz. 121 (239 Pac. 795); *Hathaway* v. *Goslant,* 77 Vt. 199 (59 Atl. 835); *Colorado & Southern R. Co.* v. *Chiles,* 50 Col. 191 (114 Pac. 661); *Ternetz* v. *St. Louis Lime & Cement Co.* (Mo.), 252 S. W. 65; *Louisville & Nashville R. Co.* v. *Vaughan's Administrator,* 183 Ky. 829 (210 S. W. 938); *Welborn* v. *Earle* (Tex. Civ. App.), 268 S. W. 982; and 64 C. J., pp. 267, 277 and 280.

The general principle underlying all these cases is that the parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice. The statement complained of should not have been made. The trial court so held, and reduced the jury's award of damages $1,500. The argument was either proper and harmless, or erroneous and prejudicial. Plaintiff claims on cross-appeal it was harmless. I think it was prejudicial and reversible error.

Other errors assigned are not likely to arise on a new trial. Judgment reversed, with costs. New trial granted.

NELSON SHARPE, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.