BEAUDOIN and another, Appellants, v. WATERTOWN
MEMORIAL HOSPITAL and another, Respondents.

*September 8—October 4, 1966.*

134

For the appellants there was a brief and oral argument by *Robert J. Shier* of Watertown.

For the respondent Watertown Memorial Hospital there was a brief by *Schlotthauer, Jenswold & Studt* and *John F. Jenswold,* all of Madison, and oral argument by *John F. Jenswold.*

For the respondent Claude there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Richard Hunter.*

BEILFUSS, J. In the trial court and here, the plaintiffs concede that without the benefit of the doctrine of *res ipsa loquitur* the proof in the record is insufficient to warrant a finding of causal negligence against either of the defendants, the doctor or the hospital. The single issue before us is whether the plaintiffs are entitled to the benefit of the doctrine of *res ipsa loquitur.*

Before discussing the issue it should be noted that the trial court granted the motion of both defendants for a nonsuit. In passing on a motion for nonsuit the court must construe the evidence in the light most favorable to the plaintiff and must give the plaintiff the benefit of favorable inferences that can reasonably be deduced from the credible evidence. If the credible evidence most favorable to plaintiff, or any reasonable inference drawn therefrom, is such that under any reasonable view the trier of the fact could find facts sufficient to constitute a cause of action, the motion for nonsuit should be denied.[1]

This court is committed to the principle that the doctrine of *res ipsa loquitur* is available in the trial of medical malpractice cases in some instances.

In *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 22, 121 N. W. (2d) 255, 122 N. W. (2d) 439, the court overruled prior cases [2] which refused to extend the doctrine to

---

[1] *Lee v. Milwaukee Gas Light Co.* (1963), 20 Wis. (2d) 333, 122 N. W. (2d) 374; *Bartz v. Braun* (1961), 14 Wis. (2d) 425, 111 N. W. (2d) 431.

[2] *Kuehnemann v. Boyd* (1927), 193 Wis. 588, 214 N. W. 326, 215 N. W. 455; *Vale v. Noe* (1920), 172 Wis. 421, 179 N. W. 572.

medical malpractice cases and adopted the general rule as follows:

> "The general rule is that the doctrine of *res ipsa loquitur* may be invoked in medical malpractice actions only where a layman is able to say as a matter of common knowledge that the consequences of the professional treatment·are not those which ordinarily result if due care is exercised, and that the doctrine is not applicable when expert medical testimony is required to show negligence on the part of the practitioner. Anno. 82 A. L. R. (2d) 1262, 1274. Those situations in which common knowledge of laymen has afforded a proper basis for invoking *res ipsa loquitur* in medical malpractice actions are summarized in Prosser, Law of Torts (2d ed.), pp. 210, 211, sec. 42, as follows:
> " 'There are, however, some medical and surgical errors on which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care. When an operation leaves a sponge in the patient's interior, or removes or injures an inappropriate part of his anatomy, or when a tooth is dropped down his windpipe, or he suffers a serious burn from a hot-water bottle, or when instruments are not sterilized, the thing speaks for itself without the aid of any expert's advice.' " [3]

The trial court was of the opinion that the plaintiff had not identified the instrumentality or the agent that had caused her burns, and that because of the possibilities suggested by the evidence, such as a hot instrument, an allergy, diabetes, high blood pressure, or a soap solution used for cleansing purposes, the jury could only speculate as to causal negligence.

In this instance the evidence is undisputed that plaintiff did not have the blisters or burns before the operation. She was under the complete control of the doctor and the hospital from the time she left her room until

[3] *Fehrman v. Smirl, supra,* page 25, does recognize an exception to this general rule so as to allow the *res ipsa loquitur* doctrine to be applied in some instance based upon expert medical testimony. This exception is not germane to this action.

the·burns were discovered. She was given an anesthetic, was unconscious, and had no way of knowing what transpired during this period. The defendants had complete control of her body and the procedures, instruments, and agents that were used.

We are clearly of the opinion that a layman is able to conclude as a matter of common knowledge that blisters in the nature of second-degree burns in an area not directly related to the operative procedures do not ordinarily result if due care is exercised.

The fact that other possibilities are suggested by the evidence is not sufficient to take away from the plaintiffs the benefit of the doctrine of *res ipsa loquitur*.

While this case only involves a trial at the nonsuit stage, it is very similar in facts and underlying policy to *Ybarra v. Spangard* (1944), 25 Cal. (2d) 486, 154 Pac. (2d) 687. In that case the plaintiff received a traumatic shoulder injury while under anesthesia during an appendectomy. In Prosser, Law of Torts (hornbook series, 3d ed.), p. 228, sec. 39, we find the following language explaining the rationale of the *Ybarra Case:*

". . . [*In Ybarra*] res ipsa loquitur was applied against all of the doctors and hospital employees connected with the operation, although it seemed quite clear that not all of them could have been responsible. The basis of the decision appears quite definitely to have been the special responsibility for the plaintiff's safety undertaken by everyone concerned. Again there is obviously a deliberate policy, similar to that found in the carrier cases, which requires the defendants to explain or pay, and goes beyond any reasonable inference from the facts; and one may surmise that this is not unconnected with the refusal of the medical profession to testify against one another."

Thus, in certain *res ipsa loquitur* cases for medical malpractice, plaintiffs will be relieved of the almost impossible onus of having to identify the precise instrumentality which caused the injury.

It must be emphasized that denial of the defendants' motion for nonsuit hardly means that plaintiffs have won the case. In Wisconsin the procedural effect of *res ipsa loquitur* is that of a permissible inference—the jury is merely permitted to draw a reasonable inference from circumstantial evidence. *Fehrman v. Smirl, supra.* Prosser, Law of Torts (hornbook series, 3d ed.), p. 233, sec. 40, ably explains this procedural effect:

"This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. The plaintiff escapes a nonsuit, or a dismissal of his case, since there is sufficient evidence to go to the jury; but the burden of proof is not shifted to his shoulders, nor is any 'burden' of introducing evidence cast upon him, except in the very limited sense that if he fails to do so, he runs the risk that the jury may, and very likely will, find against him."

The other procedural effect of the *res ipsa loquitur* doctrine is that the plaintiff is allowed to get to the jury unless the defendant has shown more than a possibility that something other than negligence on the part of the defendant caused the injury. In *Wood v. Indemnity Ins. Co.* (1956), 273 Wis. 93, 102, 76 N. W. (2d) 610, it was held:

"We are constrained to hold that in a situation where it ordinarily would be permissible to invoke the rule of *res ipsa loquitur*, such as the unexplained departure from the traveled portion of the highway by a motor vehicle, resort to such rule is not rendered improper merely by the introduction of inconclusive evidence giving rise to an inference that such departure may have been due to something other than the negligence of the operator."

Recently this court approved and quoted this principle of the *Wood Case* in *Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 555, 119 N. W. (2d) 365.

In the *Turk Case* this court further said:

"The plaintiffs' proof gave rise to an inference of negligence on the part of Prange; the defendant's proof was

only in explanation of the accident and not such as to remove every inference of possible negligence. In such a situation the doctrine of *res ipsa loquitur* applies and plaintiffs are entitled to an instruction on it. In *Koehler v. Thiensville State Bank* (1944), 245 Wis. 281, 14 N. W. (2d) 15, at page 288:

"'Of necessity, the inferences of negligence arising in cases of *res ipsa loquitur* are of varying strengths and so are the proofs adduced to meet these inferences. In a great many cases involving the existence of defective construction or maintenance in machines, for example, it is possible to meet the inference of negligence with refutation so conclusive as to leave not a scintilla of the inference, and in such a case there is no issue for the jury. On the other hand, if the counterproof is of a character that need not be treated as a verity, the inference persists and a jury, as in the *Lipsky Case, supra* [*Lipsky v. C. Reiss Coal Co.* (1908), 136 Wis. 307, 117 N. W. 803], may still be permitted to weigh the inference against the so-called rebutting testimony. That this is the scope of the rule is indicated by the following statement in the *Lipsky Case* (p. 312):

"' "The inference of negligence which in a proper case may be drawn from the accident itself is one of fact, and the authority of the jury to decide whether it should be drawn can be excluded only in presence of undisputed proof, not merely testimony, that such negligence did not occur." ' "

Counsel for the defendant doctor correctly states "a breach of a physician's duty may not be inferred merely because a certain result would be rare if proper care had been used," and cites *Fehrman v. Smirl, supra,* at page 25, and *McManus v. Donlin* (1964), 23 Wis. (2d) 289, 298, 127 N. W. (2d) 22, wherein this court refused to adopt the "rarity test." However, we do not deem the facts of this case to come within the rarity test. We refused to permit the use of the doctrine in those cases where it is shown that the doctor or hospital employees did use the requisite degree of care, judgment and skill, and without fault an unpredictable or untoward result occurred. The facts of this case as they appear in the

record at the stage this trial had reached do not satisfactorily prove that the blisters or burns were simply an untoward or unpredictable reaction to proper treatment or care. An unpredictable reaction is only one of several possibilities as the record now stands. This possibility does not defeat the right of the plaintiff to benefit from the doctrine of *res ipsa loquitur*.

The proof offered by the plaintiffs is sufficient to evoke the doctrine of *res ipsa loquitur* so as to give rise to a permissible inference of negligence on the part of either or both the hospital and the doctor. It was error to grant the motions for nonsuit. The plaintiffs should have a new trial.

*By the Court.*—Judgment reversed and a new trial ordered.