# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN BURNS,

      Plaintiff-Appellant,

v

WILLIAM BEAUMONT HOSPITAL,
MICHIGAN ORTHOPEDIC INSTITUTE, and
ESTATE of HARRY HERKOWITZ, by LYNDA
A. GLASSER, Personal Representative,

      Defendants,

and

SOUTH OAKLAND ANESTHESIA
ASSOCIATES, PC, also known as AMERICAN
ANESTHESIOLOGY OF MICHIGAN, PC, and
RANDY J. FAYNE, D.O.,

      Defendants-Appellees.

UNPUBLISHED
May 18, 2017

No. 331347
Oakland Circuit Court
LC No. 2014-141273-NH

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition to defendants South Oakland Anesthesia Associates, PC, (an assumed name for American Anesthesiology of Michigan, PC) and Randy J. Fayne, D.O. (collectively, "defendants.") The court subsequently denied reconsideration. We reverse and remand for further proceedings.

On December 13, 2011, plaintiff underwent a lumbar laminectomy at William Beaumont Hospital and Fayne provided anesthesia services.[1] When plaintiff awoke from surgery, he

---

[1] In reviewing the trial court's ruling on the motion for summary disposition, this Court considers only what was properly presented to the trial court before its decision. *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). Materials that were first presented in

-1-

noticed soreness in his left shoulder. He was discharged from the hospital on December 14, 2011. On December 15, 2011, he experienced increased pain, weakness, and immobility in his left arm. He returned to the hospital, where he was found to have a cold left upper extremity and only passive range of motion. He was admitted to the hospital, where his shoulder pain was controlled and treated with pain medication and injections. He was discharged on December 17, 2011. On December 20, 2011, he was treated by Dr. Wiater, who noted that plaintiff's pain and weakness in his left shoulder since the surgery were probably related to interoperative positioning. An MRI on December 22, 2011 showed "supraspinatus and infraspinatus tendinopathy and associated tears in the left shoulder," and neurological testing showed "a decrease in function of the suprascapular nerve and supra and spinatus muscles."

There is no dispute that the surgical procedure itself did not cause the nerve injury in plaintiff's shoulder. Plaintiff's theory is that the injury occurred during the time that he was under anesthesia. His expert, Dr. Brian G. McAlary, testified that plaintiff has a suprascapular nerve injury involving his left arm. McAlary opined that the injury occurred as he was turned and positioned for the surgery, from pressure or positional abnormalities during the surgery, or in turning him at the conclusion of the surgery. McAlary conceded that he could not identify the specific mechanism of injury or the specific moment in time that it occurred. But McAlary testified that the injury was "of a kind which does not ordinarily occur without someone's negligence." In Fayne's deposition, he acknowledged that he was responsible for positioning the patient and for monitoring the patient during surgery.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10) and argued that plaintiff could not establish malpractice because even his expert was uncertain as to how the injury occurred. In response, plaintiff relied on the doctrine of res ipsa loquitur and compared the case to *Gordon v Flynn*, unpublished opinion per curiam of the Court of Appeals, issued June 23, 2015 (Docket No. 318705). In reply, defendants argued that the requirements for res ipsa loquitur were not established. According to defendants, plaintiff had failed to show that the event does not ordinarily happen in the absence of negligence and that Fayne had exclusive control over plaintiff during the surgery. Defendants further noted that as a result of case evaluation acceptances, Beaumont and its agents would be dismissed.

At the hearing on the motion, defense counsel acknowledged that, if the other providers were still in the case, the trial court could determine that res ipsa loquitur applied because the case was comparable to *Gordon*. But, defendants contended, Fayne "was only one of a team and the rest of the team has been dismissed. We can't say he had exclusive control[.]" Ultimately, the trial court agreed with defendants' arguments, granted their motion, and dismissed the case.

On appeal, plaintiff argues that the trial court erred in granting summary disposition because the conditions for res ipsa loquitur are satisfied here. And, at a minimum, there was a question of fact whether Fayne had exclusive control for purposes of the doctrine. We agree.

---

support of plaintiff's motion for reconsideration will not be considered. See *Maiden v Rozwood*, 461 Mich 109, 126 n 9; 597 NW2d 817 (1999).

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Lakeview Commons v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists. *Id*.

The prima facie elements of a medical malpractice claim are: (1) the applicable standard of care, (2) breach of that standard, (3) injury, and (4) proximate causation between the breach and the injury. *Cox v Bd of Hosp Managers for the City of Flint*, 467 Mich 1, 10; 651 NW2d 356 (2002). In *Jones v Porretta*, 428 Mich 132; 405 NW2d 863 (1987), our Supreme Court held that the doctrine of res ipsa loquitur "entitles a plaintiff to a permissible inference of negligence from circumstantial evidence." *Id*. at 150. The *Jones* Court explained that "[t]he major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Id*. A plaintiff may rely on the res ipsa loquitur doctrine if: (1) the event was of a kind that "ordinarily does not occur in the absence of someone's negligence;" (2) it was "caused by an agency or instrumentality within the exclusive control of the defendant;" (3) it was not caused by "any voluntary action or contribution on the part of the plaintiff;" and (4) evidence of the true explanation of the event was "more readily accessible to the defendant than to the plaintiff." *Id*. at 150–151 (quotations and citations omitted). Essentially, a prima facie res ipsa loquitur case proceeds on a theory that, but for negligence, the claimed injury does not ordinarily occur. *Id*. at 157. If there is expert evidence that 'but for' negligence this result does not ordinarily occur, "even if it is disputed," "the jury is to determine whether plaintiff has proven whether it is more likely than not that defendant's negligence caused plaintiff's injury." *Id*. at 154-155. Moreover, "[w]here the conditions for res ipsa loquitur are met, the doctrine also serves to link the defendants with the negligent act[.]" *Id*. at 158 n 15.

Here, defendants challenged plaintiff's ability to establish a prima facie case under his res ipsa loquitur theory primarily on the grounds that the evidence was insufficient with regard to the first and second conditions of the doctrine. First, defendants argued that plaintiff failed to show that his injury was of a kind that "ordinarily does not occur in the absence of someone's negligence." While it is true that plaintiff's expert, McAlary, was uncertain about the specific mechanism of plaintiff's injury—it may have occurred in turning plaintiff to get him on and off the Jackson surgical table or it may have occurred from improper positioning or excessive pressure during the surgery. And that uncertainty prompted motions for summary disposition by defendants and William Beaumont Hospital where they argued that plaintiff's case was speculative. But McAlary absolutely testified that the injury was "of a kind which does not ordinarily occur without someone's negligence" and this expert testimony satisfied the first requirement for res ipsa loquitur.

Second, defendants argued that plaintiff failed to show that his injury was caused by an agency or instrumentality within their exclusive control because other members of the operating team were present during the surgery. In *Jones*, 428 Mich at 158 n 15, the Court expressly declined to address how the doctrine applied where there were multiple defendants. The Court stated: "Neither plaintiffs nor defendants have called upon this Court to consider, nor do we offer an opinion on, the effect of multiple defendants in a res ipsa loquitur case. See *Ybarra v Spangard*, 25 Cal 2d 486; 154 P2d 687 (1944)."

In *Hand v Park Community Hosp*, 14 Mich App 371; 165 NW2d 673 (1968), the plaintiff inexplicably suffered burns on one side of his body while in the hospital for treatment of a stroke that left him partially paralyzed. *Id*. at 372. He did not recall how the burns occurred, and he did not offer any evidence of cause at trial. *Id*. The trial court directed a verdict in favor of the defendant hospital. *Id*. at 373. This Court reversed and remanded for a new trial. *Id*. The burns were such that they would not have ordinarily occurred in the absence of negligence, and that was enough for an inference of negligence. *Id*.

> We think the plaintiff proved all he could have been expected to prove in this case. He had suffered a stroke and was paralyzed on the side of his body where the burns occurred. It is entirely understandable that his injury could have been sustained without his either being aware it was occurring or recalling at trial the cause of its occurrence. A hospital having care of such a patient that desires to counter the permissible inference that the injury was caused by its negligence is obliged to come forward with an explanation of the cause of the injury which persuades the trier of fact not to draw such inference or which so overcomes the inference that the court concludes it would no longer be reasonable for the trier of fact to draw the inference. [*Id*. at 374 (footnote omitted).]

The *Hand* Court recognized the possibility that a visitor, rather than an employee, was responsible for the burns:

> True, visitors were allowed and it is possible that the injury was caused by the act of someone other than one of defendant's servants. However, the absence of exclusive control does not necessarily preclude an inference of negligence in the circumstances of this case. The question is whether in the light of all of the evidence—circumstantial, direct, or whatsoever it may be, the plaintiff has produced sufficient evidence from which a jury might make a finding of negligence. [*Id*. (internal quotation marks and citations omitted).]

And the *Hand* Court quoted the following passage from *Ybarra*, 154 P2d at 691:

> "Where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct." [*Hand*, 14 Mich App at 376.]

The *Ybarra* Court further expounded on the effect of multiple defendants on the application of res ipsa loquitur:

> We have no doubt that in a modern hospital a patient is quite likely to come under the care of a number of persons in different types of contractual and other relationships with each other. . . . But we do not believe that either the number or relationship of the defendants alone determines whether the doctrine of res ipsa loquitur applies. Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for failure in this regard. Any defendant who negligently injured him, and any defendant charged with his

care who so neglected him as to allow injury to occur, would be liable. The defendant employers would be liable for the neglect of their employees; and the doctor in charge of the operation would be liable for the negligence of those who became his temporary servants for the purpose of assisting in the operation.

\* \* \*

It may appear at the trial that, consistent with the principles outlined above, one or more defendants will be found liable and others absolved, but this should not preclude the application of the rule of res ipsa loquitur. The control at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation. Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that he identify any one of them as the person who did the alleged negligent act. [*Ybarra*, 154 P2d at 690.]

On appeal, defendants argue that *Hand* was wrongly decided and relied on *Gadde v Mich Consol Gas Co*, 377 Mich 117; 139 NW2d 722 (1966), to state that exclusive control is not required, but *Gadde* was "superseded" by *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005). Specifically, defendants refer to the portion where the *Woodard* Court set forth the requirements for res ipsa loquitur from *Jones*, 428 Mich at 150-151, and stated the event "must be caused by an agency or instrumentality within the exclusive control of the defendant." But *Woodard*'s mere recitation of the requirements for the res ipsa loquitur doctrine from *Jones*, 428 Mich at 150-151, does not eliminate the persuasive value of *Hand*. In *Jones*, the Court expressly declined to discuss how the doctrine would apply with multiple defendants. The significance of multiple defendants as related to the requirement of exclusive control was not at issue in *Woodard*. And that Court's mere reference to the requirements is an inadequate basis for concluding that the *Woodard* Court had expressed a view on the matter reserved in *Jones*.

Defendants also argue that *Hand* is inconsistent with MCL 600.2912a, which requires a plaintiff to prove "the defendant" breached the standard of care. However, if a pronouncement is to be made that, contrary *Jones*, 428 Mich 132, and its progeny, the doctrine of res ipsa loquitur may not be used in a medical malpractice case, that pronouncement must come from our Supreme Court. "It is the duty of the Supreme Court to overrule or modify caselaw if and when it becomes obsolete, and the Court of Appeals and the lower courts are bound by the precedent established by the Supreme Court until it takes such action." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007).

The decisions are persuasive in stating that the doctrine of res ipsa loquitur may apply to a medical malpractice case where an unconscious patient is under the care of a surgical team. And in this particular case, where Fayne has acknowledged his responsibility for the positioning and monitoring that McAlary has linked to plaintiff's injury, a jury may find that but for Fayne's negligence plaintiff would not have been injured.

-5-

As an alternative basis for affirmance, defendants argue that the dismissal of William Beaumont Hospital would have res judicata effect because the release of a principal operates as a release of the agent. This argument was not raised below. "Generally, an issue must be raised, addressed, and decided in the trial court to be preserved for review." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751-752 n 40; 880 NW2d 280 (2015). This Court may address an issue not decided by the trial court where it concerns a legal question and all of the facts necessary for its resolution are present. *Id.* However, whether Fayne was an agent of the hospital involves a factual matter that was not explored because the issue was not raised.

Reversed and remanded for further proceedings consistent with this opinion. Plaintiff may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-6-